L. A. ANDREW, Receiver, Appellant, v. WALTER INGVOLDSTAD et al., Appellees.

No. 42222.

A<small>PRIL</small> 3, 1934.

E. P. Shea, for appellant.

C. N. Houck and J. A. Nelson, for appellees.

K<small>INDIG</small>, J.—On, and for some time before February 15, 1916, the defendant-appellee Walter Ingvoldstad owned a half section of land in Hand county, South Dakota. The land was covered by a mortgage. Some time before February 15, 1916, the mortgage became due, and proceedings were instituted by the mortgagee to foreclose the same. While the action was thus pending, the appellee Walter Ingvoldstad commenced negotiations with the Winneshiek County State Bank of Decorah, Iowa, for a loan in order to pay the mortgage indebtedness on the South Dakota land. This loan, according to the negotiations, was to be secured by a mortgage which would be a first lien on the South Dakota land after the mortgage

in the foreclosure proceedings had been fully satisfied and discharged.

Accordingly the appellee Walter Ingvoldstad made written application to C. J. Weiser, an officer of the bank, for the loan. At this time the appellees were both residents of Minneapolis, Minnesota. Ever since that time they have been residents of Minnesota. Subsequent to the written application for the loan, a note for $5,000 together with a mortgage securing the same, on the South Dakota land, were prepared by Weiser. After being thus prepared, the blank note and mortgage were sent by Weiser to the appellees at Minneapolis, where they were duly executed by them. Following their execution, the note and mortgage were mailed by the appellees to Weiser, at Decorah, Iowa. Immediately after thus receiving the note and mortgage through the mails, Weiser, who was acting for the Winneshiek County State Bank, indorsed the note and assigned the mortgage to that institution. Then the bank paid the appellees' indebtedness on the South Dakota land, under the mortgage being foreclosed, and obtained the discharge of that instrument. As soon as the Dakota mortgage was discharged, the Winneshiek County State Bank then placed its own mortgage on record. Thereafter the Winneshiek County State Bank became insolvent and went into receivership, and L. A. Andrew, the state superintendent of banking, was duly appointed the receiver thereof.

Thus the matter stood until October 10, 1932, when L. A. Andrew, the receiver of the Winneshiek County State Bank, the plaintiff-appellant, commenced the present action on the promissory note. There was an irregularity in the service of the original notice upon the appellee Walter Ingvoldstad. He objected to the service, and the appellant thereupon dismissed the action as to him, without prejudice. The action against the appellee Harriet F. Ingvoldstad was aided by attachment, and certain properties in Iowa belonging to her were attached. Walter Ingvoldstad is no longer a party to this suit, and therefore we will hereafter refer to Harriet F. Ingvoldstad as the appellee.

An answer was filed by the appellee. Her answer was divided into three divisions: First, the appellee pleaded the Minnesota statute of limitations on the theory that the note sued upon is a Minnesota contract; second, the appellee pleaded that she signed the note without consideration; and, third, the appellee pleaded that, after the due date, the maturity date of the note was extended without her

knowledge or consent. Later the appellant moved to strike division 3 of the appellee's answer relating to the extension of the maturity date on the note. This motion was sustained by the district court, and that division of the appellee's answer was stricken. Consequently, after division 3 was stricken, there remained in the answer only divisions 1 and 2, which, as before said, related: First, to the Minnesota statute of limitations; and, second, to the absence of consideration for the appellee's signature on the note.

Although the answer contained only these two defenses, yet the parties tried the issue of payment. Payment was not pleaded as a defense so far as the abstract indicates. Upon those issues the cause was submitted to the district court without a jury, and that tribunal found in favor of the appellee. Whereupon the appellant appealed. There is no brief or argument filed in this court on· behalf of the appellee, but the appellant has fully argued the controversy. Of course, in view of the fact that this case was tried as a law action, we cannot reverse the district court on its findings of fact, providing there is evidence in the record upon which to base such findings. Nevertheless, we may, of course, reverse the district court on any error of law which it may have committed.

I. It is contended by the appellant that the district court erred in sustaining the appellee's defense based upon the Minnesota statute of limitations.

In Minnesota, a cause of action on a note of the kind in question is barred in six years after maturity. For a period of approximately twenty years before this suit was brought, the appellee and her husband resided continuously in Minnesota. They were residents of Minnesota, as before explained, when they signed the note and mortgage. The appellee pleaded the Minnesota statute of limitations, and at the trial she proved it. This she did on the theory that the note in question is a Minnesota, as distinguished from an Iowa, contract. On the other hand, it is seriously contended by the appellant that the note is not a Minnesota, but an Iowa, contract. If the note is a Minnesota contract, then, of course, the action commenced by the appellant is barred by the Minnesota statute of limitations. Tharp v. Thero, 112 Iowa 573, 84 N. W. 709; Jarl v. Pritchett, 190 Iowa 1268, 179 N. W. 945; Martin v. Martin, 205 Iowa 209, 217 N. W. 818.

Assuming that the cause of action is barred by the laws of Min-

nesota, then under the Iowa statutes the same is barred here. Section 11014 of the 1931 Code reads:

"When a cause of action has been fully barred by the laws of any country where the defendant has previously resided, such bar shall be the same defense here as though it had arisen under the provisions of this chapter; *but this section shall not apply to causes of action arising within this state.*" (Italics supplied.)

Although the statute refers to a cause of action barred by the laws of any country, this court has held that the word "country" there used includes a state of this Union. See Davis v. Harper, 48 Iowa 513; Thompson v. Read, 41 Iowa 48. As expressly indicated in section 11014, above quoted, "this section shall not apply to causes of action arising within this state." It is because of this phrase of section 11014 that the appellant seeks to maintain its cause of action in Iowa.

So it is now necessary for us to determine whether the note in question is an Iowa, or a Minnesota, contract. When testifying upon this subject, Walter Ingvoldstad, the appellee's husband, said in substance that there had been correspondence between him and the Winneshiek County State Bank before they sent the note and mortgage to Minneapolis to be executed by him and the appellee. The purpose, according to the testimony of Walter Ingvoldstad, for which the appellee and her husband borrowed the money, was to obtain the satisfaction of the mortgage then being foreclosed on the South Dakota land. Obviously, according to that testimony, it was not the plan of the appellee and her husband to obtain the money from the Winneshiek County State Bank first and thereafter use it themselves to pay off and satisfy the South Dakota mortgage indebtedness. Their purpose, the witness indicated, was to induce the Winneshiek County State Bank, of Decorah, Iowa, to use the money involved in the new loan to pay off the South Dakota indebtedness, and then record the new mortgage in order that it would become a first lien upon the South Dakota land to secure the new loan. Before the Winneshiek County State Bank would advance the money, it was necessary for them to ascertain that their mortgage securing the new loan would be a first lien on the South Dakota land after the old mortgage indebtedness was satisfied. Accordingly, when the Winneshiek County State Bank sent the blank note and mortgage to the appellee and her husband at Minneapolis for execution, it did not

intend that such note and mortgage, when executed, should become a binding contract before received at Decorah, Iowa. Nor did the appellee and her husband intend that such note and mortgage should become a binding contract until received by the Winneshiek County State Bank at Decorah, Iowa. Manifestly under the circumstances the note and mortgage in question were not to become contracts at all until the Winneshiek County State Bank advanced the money to, and in fact did, pay off the old mortgage indebtedness on the South Dakota land. As before said, the Winneshiek County State Bank would not thus advance the money even after receiving the note and mortgage in question until it ascertained that its mortgage would be a first and prior lien on the South Dakota real estate. These preliminary investigations and transactions necessarily would have to be completed after the note and mortgage now under consideration was received by the Winneshiek County State Bank at Decorah, Iowa. Consequently it is apparent that the note in suit is an Iowa, and not a Minnesota contract. Moran v. Moran, 144 Iowa 451, 123 N. W. 202, 30 L. R. A. (N. S.) 898; In re Estate of Thorne, 202 Iowa 681, 210 N. W. 952; Page v. Peden, 192 Iowa 470, 184 N. W. 1033; Webster v. Modern Woodmen, 192 Iowa 1376, 186 N. W. 659; Kellum v. Robinson, 193 Iowa 1277, 188 N. W. 821; Chicago, R. I. & P. Ry. Co. v. Lundquist, 206 Iowa 499, 221 N. W. 228.

Concerning this, we said in In re Estate of Thorne, supra, reading on pages 684 and 685:

"We have held that, where a note was executed and delivered in another state, the cause of action thereon arose in that state, within the meaning of the statute of limitation. * * * In Moran v. Moran, supra, we held that a note written and signed in another state and sent by mail to the payee in this state, by whom a loan was to be made to the maker, had no validity until presented to the payee in this state and the promised loan made; that the note was an Iowa contract; and that section 3452, Code of 1897, now section 11014, Code of 1924 (now section 11014, Code of 1931), did not apply."

It is apparent, therefore, that the district court erred in finding, as a matter of law, that the contract in question was barred by the Minnesota statute of limitations.

II. The second defense pleaded by the appellee was that her signature to the note was placed thereon without consideration.

A careful study of the record discloses beyond peradventure of doubt that the appellee's signature to the note was amply supported by a legal consideration. She signed the note at the request of her husband in order that he might obtain the loan in question. Without the appellee's signature, the loan would not have been made.

When upon the witness stand, the appellee conceded that she knew the purpose of the loan and understood that it was necessary for her to sign the note in order for her husband to obtain it. Her husband did obtain the loan, and that fact furnishes the consideration for the signature. First National Bank of Logan v. Mether, 217 Iowa 695, 251 N. W. 505; American Commercial & Savings Bank v. Kramer et al., 206 Iowa 49, 219 N. W. 931; Commercial Savings Bank v. Carey et al, 207 Iowa 1060, 224 N. W. 62. See, also, Starry v. Starry & Lynch, 212 Iowa 274, 234 N. W. 281.

Consequently, it was error for the district court to say, as a matter of law, that there was no consideration to support the appellee's signature to the note.

III. Although the appellee did not plead payment as a defense to the suit on the note, nevertheless evidence was introduced on the theory that there had been payment. Without expressly holding that payment was an issue in the case, we assume, without deciding, that through some manner it became such. Nevertheless there is no evidence in the record upon which the court could find that the note had been paid. All the evidence in the record indicates that it had not been paid. Something is said by some of the witnesses to the effect that a deed for the Dakota land executed by Helen M. Wilcox (after the Dakota land had been transferred to her by the appellee and her husband) was held by the bank. Perhaps this reference to the deed is made for the purpose of inferring that the bank held this deed in some way in satisfaction of the mortgage indebtedness, but the record does not bear out this theory.

Mrs. Wilcox is the mother of the appellee. She was indebted personally to the bank, and the escrow delivery of the deed to the bank was for the purpose of securing the indebtedness which Mrs. Wilcox owed the bank. It was not for the purpose of satisfying the indebtedness which the appellee owed the bank. Also something is said in the record about a contract entered into either between the appellee and her husband, or Mrs. Wilcox, and a purchaser of the South Dakota real estate. That contract, it appears, was deposited in the bank as security for money which Mrs. Wilcox owed

the bank, and for no other purpose. In no way was the indebtedness which the appellee owes the bank affected by either of those transactions.

There is no substantial evidence in the record indicating in any way that the indebtedness which the appellee owes the bank had been satisfied. Without doubt the South Dakota land was not transferred to the bank by deed or otherwise. At no time did the bank have any interest in the South Dakota land except that which it received through the appellee's mortgage before explained. So there is no evidence in the record indicating that the appellee's indebtedness to the bank has been satisfied, and the district court erred, as a matter of law, in holding that there is such evidence.

Wherefore the judgment of the district court must be, and hereby is, reversed.—Reversed.

CLAUSSEN, C. J., and EVANS, ALBERT, and DONEGAN, JJ., concur.